THIS OPINION
 HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN
 ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 The State of
 South Carolina, Respondent,
 v.
 Kenneth Lee
 Lavender,
 Richard G.
 Thompson, d/b/a All-Out-Bail Bonding, as Surety, and Troy Bob, a/k/a Tracey
 Bowen, d/b/a Bonds by Gaynell, Palmetto Surety Corp., as Surety, Defendants
 of whom Richard
 G. Thompson, d/b/a All-Out-Bail Bonding, as Surety, and Troy Bob, a/k/a
 Tracey Bowen, d/b/a Bonds by Gaynell, Palmetto Surety Corp., as Surety, are the Appellants.
 
 
 

 

Appeal From Greenville County
 Alexander S. Macaulay, Circuit Court
 Judge
Unpublished Opinion No. 2009-UP-198
Submitted April 4, 2009  Filed May 6,
 2009   
AFFIRMED

 
 
 
 Robert T. Williams, Sr., of Lexington, for Appellants.
 Attorney General Henry Dargan McMaster, Chief Deputy Attorney
 General John W. McIntosh, Assistant Attorney General T. DeWayne Pearson, of Columbia, for Respondent.
 
 
 

PER CURIAM:  This
 case is an appeal from a bond estreatment matter involving one defendant and
 two bonding companies. Richard G. Thompson, d/b/a All Out Bail Bonding, and
 Troy Bob, a/k/a Tracey Bowen, d/b/a Bonds by Gaynell (collectively bonding
 companies) appeal from an order of the trial court estreating $55,000 on each
 of the bonding companies' $100,000 bonds.  The bonding companies contend the
 trial court erred in ordering the amounts estreated on each bond, asserting the
 court failed to properly consider the necessary elements for bond estreatment
 and the court abused its discretion in ordering a total estreatment of $110,000
 on the two bonds.  We affirm.[1]
FACTUAL/PROCEDURAL BACKGROUND
On April 5, 2005,Kenneth Lee Lavender was arrested on drug
 trafficking charges.  On August 31, 2005, his bond was set at $200,000 with
 certain conditions, including that Lavender not leave the state, that he appear
 at all scheduled hearings and trial, and that he keep the clerk of the State
 Grand Jury advised of his home address.  He was released on an appearance
 recognizance bond in the amount of $200,000, with Richard G. Thompson, of All
 Out Bail Bonding, and Troy Bob,[2] of Bonds by Gaynell, executing the "Order Specifying Methods and
 Conditions of Release," each being responsible for $100,000.  Lavender
 failed to appear at a scheduled status conference on April 7, 2006 and a bench
 warrant was issued for his arrest that same day.
Following the issuance of a rule to show cause to both bonding
 companies and a September 29, 2006 hearing on the matter, the trial court
 issued a form order on September 29, 2006, followed by an October 9, 2006
 order, estreating the bond in the amount of no more than $90,000 for each bonding
 company based on an incremental schedule.  Pursuant to the schedule, if
 Lavender was presented within thirty days of the hearing, the bonding companies
 would have no financial liability.  For every thirty-day period thereafter, the
 bonding companies would be responsible in $15,000 increments for the first
 several months, with $30,000 to be forfeited upon the passing of the sixth
 month, until Lavender was presented or the total amount reached $90,000 for
 each company.  The order further provided the bonding companies' relief from
 further liability was subject to the State's right to request a hearing to
 determine what, if any, compensation was owed by the companies for costs to the
 State associated in locating and apprehending Lavender.
The bonding companies filed a motion for relief of judgment from
 the 2006 order of estreatment. After
 Lavender was apprehended in February 2007, the State filed a motion for rule to
 show cause as to criminal and civil contempt in November 2007 based on the
 bonding companies' failure to comply with the court's graduated scale of
 estreatment.[3]  At a hearing on the matter, the bonding companies argued that
 costs to the State should be considered, and the court should take note of the
 fact that the companies paid $10,000 for a tip regarding a telephone number that
 ultimately led to Lavender's location in Florida and his subsequent
 apprehension.  The companies presented evidence that they began searching for
 Lavender about a week to a week and a half after he absconded, when they discovered
 Lavender had cut off his electronic monitoring bracelet.  The companies
 detailed their various attempts to secure Lavender when they believed they had
 found him, but were unsuccessful in attaining the necessary help from
 authorities.  Ultimately, the bonding companies paid a confidential informant
 $10,000 for a cell phone number belonging to Lavender, which the companies then
 turned over to SLED.
Max Dorsey, a Lieutenant in the vice unit of SLED, testified that
 after the information was conveyed to him regarding Lavender's phone number,
 SLED obtained a court order resulting in information from the telephone company
 as to the area where Lavender was located.  Thereafter, he contacted the
 Florida Department of Law Enforcement with the information and, after some
 police work by that department, the Florida authorities were able to capture
 Lavender.  Dorsey noted two SLED agents travelled to Florida to transport
 Lavender back to South Carolina.  When asked about the money and man-hours
 expended by SLED on the matter, he testified as follows:

 A:  Im not sure, Ma'am.  I know we independently, outside of [the
 owner of one of the bonding companies] and his group of bonding agents, had
 made some attempts to locate Mr. Lavender.  We too had informants out there
 that we're working with to find him, many, many man-hours by myself and the
 other SLED agents assigned to the State Grand Jury.  
 Not to mention the amount of money from the phone records that
 SLED had to pay for and then his eventual transport back to the State of South
 Carolina.   

The State requested the court enforce its order of estreatment,
 which at the point of capture of Lavender amounted to $60,000 per company based
 on the graduated scale, but allowed $5,000 a piece for each bonding company
 should be subtracted to reflect the total $10,000 the companies spent on the
 tip which led to Lavender's arrest.  The State thus requested $55,000 be
 estreated as to each company.  The bonding companies objected, arguing the
 State failed to present sufficient evidence of its efforts in terms of monetary
 expenses and the bonding companies made the effort resulting in the successful
 apprehension of Lavender.    
After
 taking the matter under advisement, the court issued its order estreating the
 companies' bonds in the amount of $55,000 each.  The court noted that under the
 original order, the companies would have been required to pay $60,000 a piece,
 but "[a]fter considering the costs to the State as well as the purpose of
 the bond and the nature and willfulness of the default" the court
 determined, pursuant to Section 38-53-70 of the South Carolina Code Ann.
 Section 38-53-70, that justice required each company forfeit $55,000.  This
 appeal followed.
STANDARD OF
 REVIEW
In appeals from a decision on the forfeiture or remission of a
 bail bond, the appellate court reviews the circuit court's ruling for an abuse
 of discretion.  State v. McClinton, 369 S.C. 167, 170, 631 S.E.2d 895,
 896 (2006).  

 An
 abuse of discretion occurs when the circuit court's ruling is based upon an
 error of law, such as application of the wrong legal principle; or, when based
 upon factual conclusions, the ruling is without evidentiary support; or, when
 the circuit court is vested with discretion, but the ruling reveals no
 discretion was exercised; or when the ruling does not fall within the range of
 permissible decisions applicable in a particular case, such that it may be
 deemed arbitrary and capricious.  

Id. (citing Fontaine v. Peitz, 291 S.C. 536, 539,
 354 S.E.2d 565, 566 (1987); S.E.C. v. TheStreet.Com, 273 F.3d 222, 229
 n.6 (2d Cir. 2001)). 
LAW/ANALYSIS
The
 bonding companies contend the trial court erred in failing to consider the
 necessary elements in determining bond estreatments.  They further assert the
 court abused its discretion in ordering a total of $110,000 estreated.  We
 disagree.
I.  Failure to Consider
 Necessary Elements   
The
 bonding companies first contend the trial court gave only a cursory examination
 of the factors it was required to consider and failed to properly address the
 requirements in its ruling.  We disagree.
The issue of
 whether a bond forfeiture should be remitted and, if so, to what extent is
 vested in the sound discretion of the trial judge.  State v. Holloway,
 262 S.C. 552, 557, 206 S.E.2d 822, 824 (1974).  In making a determination as to
 remission of the judgment on a forfeited bond, the court is required to "consider
 the costs to the State or any county or municipality resulting from the
 necessity to continue or terminate the defendant's trial and the efforts of law
 enforcement officers or agencies to locate the defendant." S. C. Code Ann.
 § 38-53-70 (Supp. 2007);  accord Ex parte Polk, 354 S.C. 8, 12,
 579 S.E.2d 329, 331 (Ct. App. 2003) (holding section 38-53-70 unambiguously
 provides the trial court must consider costs to the State in determining
 remission of judgment on a forfeited bond).  However, in determining whether
 any remission of the judgment is warranted, the trial court is not limited to
 considering only the actual cost to the State.   Ex parte Polk, 354 S.C.
 at 12-13, 579 S.E.2d at 331.  Rather, the court should consider, at a minimum,
 the following factors:  (1) the purpose of the bond; (2) the nature and
 willfulness of the default; and (3) any prejudice or additional expense resulting
 to the State.  Id. at 13, 579 S.E.2d at 331.
Here, the trial
 court noted in its order the statutorily mandated consideration of costs to the
 State in determining remission pursuant to section 38-53-70.  It further
 acknowledged the three minimum factors enumerated in Ex parte Polk that
 the trial court should consider, and discussed each of these factors as
 pertinent to the circumstances.  Accordingly, we find no merit to the bonding
 companies' assertion that the trial court failed to properly consider and
 address the necessary elements.
II. 
 Abuse of Discretion
The bonding
 companies further argue the trial court abused its discretion in ordering
 estreatment in the amount of $110,000.  They argue the trial court must, after
 review of the Ex parte Polk factors, "use its discretion in setting
 an estreatment amount that fairly compensates the State for any costs and
 prejudice suffered due to the bond skipper's absence" and that nothing in
 the record indicates the court used any cost analysis or reconciled the
 estreatment amount to the cost and inconvenience placed on the State. 
 Accordingly, they contend the amount ordered estreated by the court was punitive,
 as well as arbitrary and capricious, and represented an abuse of discretion. 
 We disagree.
The overriding
 purpose of requiring a criminal defendant to post bond before his release from
 custody is to ensure the defendant's appearance before the courts at
 appropriate times.  Ex parte Polk, 354 S.C. at 11, 579 S.E.2d at 330; State
 v. Workman, 274 S.C. 341, 343, 263 S.E.2d 865, 866 (1980).   When a bond is
 violated by the defendant's failure to appear, the State has a right to full
 estreatment.  State v. Cochran, 358 S.C. 24, 27, 594 S.E.2d 844, 845
 (2004).  As guarantor, the surety on an appearance bond undertakes the risk of
 forfeiture in the event the defendant fails to appear as required.  Ex parte
 Polk, 354 S.C. at 11, 579 S.E.2d at 330.  When the terms of the bond are
 breached, the bond is estreated by a conditional order and the bondsman is then
 entitled to notice and an opportunity to be heard to show cause as to why the
 estreatment order should not become final.  State v. Boatwright, 310
 S.C. 281, 286, 423 S.E.2d 139, 142 (1992) (Toal, J., dissenting).  Once the
 bond has been estreated by the conditional order, another hearing may be held
 to determine the amount, if any, to be remitted.  Id.  However,
 presentment of an accused after default does not entitle a surety to a remission
 of the forfeiture as a matter of right.  Holloway, 262 S.C. at 555-56,
 206 S.E.2d at 824.
Turning to the Ex
 parte Polk factors, it is undisputed Lavender was charged with serious drug
 offenses for which the court required a substantial bond in the amount of
 $200,000 in an effort to ensure Lavender's appearance. Lavender failed to
 appear as required on April 7, 2006 and was not captured until some ten months
 later.  The only evidence of record is that Lavender willfully absconded from
 the jurisdiction, remaining at large for a substantial period of time. 
 Accordingly, he was willfully in default of his appearance bond, and his
 actions placed the bonding companies in default of their obligation to produce
 Lavender at his scheduled hearing.[4]  Finally, the record clearly shows the State incurred considerable expenses in
 the apprehension of Lavender.  Although it did not quantify a specific dollar
 expenditure as the bonding companies desired, the record shows the State worked
 independently of, as well as with, the bonding companies in its attempts to locate Lavender.  Agent Dorsey testified
 he had his own informants out there that they worked with in order to locate
 Lavender, and he and the other SLED agents assigned to the State Grand Jury
 "spent many, many man-hours" on Lavender's apprehension. 
 Additionally, the State incurred expenses related to obtaining a court order to
 acquire information from the telephone company, worked with the authorities in
 Florida to capture Lavender, and sent two SLED agents to Florida to transport
 Lavender back to South Carolina.  
Here, the bonding
 companies each undertook the risk of forfeiture of $100,000 a piece on
 Lavender's appearance bond.  After Lavender absconded from the jurisdiction,
 the court, in its initial order of estreatment, provided a graduated scale of
 estreatment, allowing the companies to benefit by the earliest capture and
 surrender of Lavender.  At the point of Lavender's apprehension, the bonding
 companies faced estreatment in the amount of $60,000 under the prior order. 
 Upon reconsideration, and after analysis of the Ex parte Polk factors,
 the trial court used its discretion in remitting an additional $5,000 for each
 company, leaving them liable for only $55,000 on their original $100,000
 potential obligations. 
Based on the
 foregoing, we cannot say the trial court abused its discretion by ordering
 estreatment in the total amount of $110,000.  Accordingly, the order of the
 trial court is        
AFFIRMED. 
HUFF,
 WILLIAMS, and KONDUROS, JJ., concur.

[1] We decide this case without oral argument pursuant to
 Rule 215, SCACR.
[2] Apparently, Troy Bobs real name is Tracey
 Bowen.
[3] Due to some irregularities in regard to notice of the
 previous estreatment order to all the parties, the court continued the hearing
 and the State subsequently withdrew its motion for criminal and civil contempt.
[4] While the bonding companies focus on the
 companies' actions in attempting to locate and apprehend Lavender, our courts
 have only indicated the focus on the willfulness component is from the
 perspective of the criminal defendant.  See Boatwright, 310 S.C.
 at 284, 423 S.E.2d at 141 (noting although the criminal defendant's failure to
 appear was not found to be willful where he had been extradited to another
 state, he otherwise breached the conditions of his bond when he breached the
 condition of good behavior);  Workman, 274 S.C. at 343-44, 263 S.E.2d at
 866 (stating "[e]ven assuming Workman acted wilfully when he breached the
 good behavior condition of his [appeal] bond, those offenses bore no relation
 to the offenses for which he had been convicted and the State was not
 prejudiced thereby").  However, even assuming, without deciding, that the
 matter is properly considered in light of willfulness from the sureties'
 perspective, the trial court here clearly considered in its order the efforts
 of the bonding companies to apprehend Lavender in regard to the willfulness of
 default factor.